**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THREE S DELAWARE, INC. & SCOTT R. STEELE,<br><br>Plaintiffs,<br><br>v.<br><br>DATAQUICK INFORMATION SYSTEMS, INC. & MAXAR TECHNOLOGIES, INC.,<br><br>Defendants. | Civil Action No. 25-18991 (RK) (TJB)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Motions to Dismiss by Defendants Maxar Technologies, Inc. ("Maxar") and DataQuick Information Systems, Inc. ("DataQuick"), brought under Federal Rules of Civil Procedure ("Rule") 12(b)(2) and 12(b)(3).[1] ("Maxar MTD," ECF No. 28; "DataQuick MTD," ECF No. 31.) Plaintiffs Three S Delaware, Inc. ("3SD") and Scott R. Steele (collectively, "Plaintiffs") opposed the Motions, ("Maxar Opp.," ECF No. 29; "DataQuick Opp.," ECF No. 32), and Defendants replied, (ECF Nos. 30, 33). Having considered the parties' submissions, the Court resolves the pending Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motions are **GRANTED**.

[1] For the reasons set forth herein, as the Court is dismissing this case for lack of personal jurisdiction, it need not address Defendants' Motions insofar as they relate to improper venue.

## I. BACKGROUND

At a high level, the Court provides the following summary of the subject lawsuit, which thereafter will be set forth in far greater, more excruciating detail: In or around 1996, thirty years ago, Plaintiff 3SD and a precursor to Defendant DataQuick entered into a contract. In 2003, Defendant DataQuick—after receiving the rights to that contract by assignment—sued 3SD in California state court for claims arising from the contract based on Plaintiffs' alleged failure to make agreed upon and proper payments pursuant to the agreement. In 2004, in this California action, 3SD, after filing an unopposed motion to compel arbitration, commenced an arbitration proceeding and counterclaimed its own breach of contract claim against Defendant DataQuick.

Finally, in May of 2005, while at the arbitration's merits hearing, Plaintiff Scott Steele and 3SD's then counsel, on their own volition and over the arbitrator's request to the contrary, literally walked out of the arbitration they initiated and refused to participate thereafter. (ECF No. 1-1 at 829–32.[2]) The arbitrator continued with the evidentiary hearing, evaluated the merits of both sides, including Plaintiffs *in abstentia*. The arbitrator ultimately issued an award of approximately $6 million in favor of Defendant DataQuick and against Plaintiff 3SD. *Steele Software Sys. Corp v. DataQuick Info. Sys., Inc.*, No. 05-2017, ECF No. 1-6 (D. Md. July 22, 2005) [hereinafter the "Arbitrator's Award"].

---

[2] Because the underlying exhibits contain inconsistent pagination and exhibit lettering, the Court, to avoid confusion, refers to the 912 pages of exhibits attached to Plaintiffs' Complaint by PDF page number. (ECF No. 1-1.) Furthermore, although Plaintiffs provided an extensive volume of exhibits, many documents related to the disputed Maryland arbitration—although available as exhibits in other cases discussed below, *infra* note 3—were not attached to the Complaint. *See, e.g.*, *Steele Software Sys. Corp v. DataQuick Info. Sys., Inc.*, No. 05-2017, ECF No. 1-6 (D. Md. July 22, 2005) (arbitrator's final award). Because Plaintiffs extensively reference this arbitration—and their case, *in toto*, seeks to upend the judgment stemming from it—these documents are deemed incorporated by reference into the Complaint, and the Court may consider them. *Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014). Ultimately, however, the Court need not look beyond the Complaint to reach its holding that the Court lacks personal jurisdiction over Defendants, as Plaintiffs provide no basis for personal jurisdiction in New Jersey.

In July of 2005, in the United States District Court for the District of Maryland, 3SD commenced a lawsuit to vacate the arbitrator's award. A federal district judge found against Plaintiff 3SD, confirmed the arbitrator's award in favor of Defendant DataQuick, and reduced same to a judgment. *Steele Software Sys. Corp. v. DataQuick Info. Sys. Inc.*, No. 05-02017, ECF No. 37 (D. Md. Jan. 17, 2006) [hereinafter "D. Md. Judgment"].[3] 3SD, in order to appeal the judgment to the Fourth Circuit, secured a supersedeas bond in excess of $7 million from a surety it retained, Federal Insurance Company ("Federal Insurance"). Federal Insurance provided the ministerial function 3SD sought, which was to ensure the judgment against it while it sought relief from the Fourth Circuit. That relief, insofar as Plaintiffs were concerned, did not come to pass, as the Fourth Circuit affirmed the District Court's judgment against 3SD in July of 2007. *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 523 (4th Cir. 2007)

Plaintiffs, in both California and Maryland, then engaged in a series of years-long dilatory, obstructive tactics designed to re-open proceedings and vacate the judgment. Plaintiffs allege, in short, that Defendants, their previous counsel, an arbitrator, and others orchestrated a decades-long fraud across multiple courts that predated and resulted in the judgment issued by the District of Maryland in 2006.[4] ("Compl.," ECF No. 1 ¶¶ 44–93.) Plaintiffs' interminable campaign of

[3] The Court takes judicial notice of this Judgment and all of the relevant opinions and court filings relating to this disputed arbitration and decades of litigation. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("[W]e may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion." (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999))).

[4] *See DataQuick Info. Sys., Inc. v. Steele Software Sys. Corp.*, No. GIC 822682 (Cal. Super. Ct., San Diego County Dec. 12, 2003) (original proceeding in California Superior Court filed by Defendant DataQuick in 2003); *Whiteford, Taylor & Preston LLP v. Three S Del., Inc.*, No. 3-C-07-6033, 2007 WL 7731117 (Md. Cir. Ct. Dec. 18, 2007) (cross dispute between Plaintiffs and their previous counsel in District of Maryland litigation); *Acxiom Corp. v. Three S Del., Inc.*, No 09-2058, ECF No. 12 (D. Md. Aug. 12, 2009) (granting a temporary restraining order against Plaintiffs for their attempts to reinstitute arbitration proceedings against other parties); *Three S Del., Inc. v. AAA*, No. 09-0051, ECF No. 1 (D. Md. Jan. 9, 2009) (subsequent lawsuit brought by Plaintiffs against Defendants, arbitrator, Plaintiffs' counsel, American Arbitration Association, and others); *Steele v. Motz*, No. 09-792, ECF No. 31 (D. Md. Nov. 19, 2009) (dismissing *pro*

vexatiousness apparently knows no bounds, as Plaintiff Steele sued the Maryland federal district judge, accusing him of fraud. *Steele v. Motz*, No. 09-792, ECF No. 31 (D. Md. Nov. 19, 2009). Throughout this litigious odyssey, Plaintiffs have taxed the finite resources of a multitude of federal and state courts around the country in an attempt to challenge the underlying arbitration. None succeeded.

In September of 2024, undeterred, Plaintiffs filed a 277-page, 1,048-paragraph complaint in New Jersey Superior Court leveling, yet again, the same accusations of fraud seeking to overturn the 2006 judgment. *Three S. Del., Inc. v. DataQuick Info. Sys.*, No. MER-C-87-24, CHC2024299452 (N.J. Super Ct. Ch. Div. Sept. 26, 2024).[5] In February of 2026, in a comprehensive 35-page written decision, the Superior Court Judge dismissed Plaintiffs' complaint *in toto*, and with prejudice. *See id.* at CHC202659597 [hereinafter "State Ct. Op."]. A subsequent motion for reconsideration was denied. *Id.* at CHC2026119603.

As if the above was not enough, in December of 2025, while motions to dismiss filed by Defendants were pending before the New Jersey Superior Court Judge, Plaintiffs filed the subject lawsuit. (Compl.) Present now before this Court are Defendants' motions to dismiss on personal jurisdiction and improper venue grounds. (Maxar MTD; DataQuick MTD.) As will be explained, dubious as such a prospect might be, even if this Court were to somehow unearth merit in Plaintiffs' 76-page Complaint and over 900 pages of exhibits that eluded at least four other state

---

*se* suit brought by Plaintiff Scott Steele against the Honorable J. Frederick Motz, U.S.D.J., ret., the Maryland federal District Court Judge involved in substantially all of Plaintiffs' litigation); *DataQuick Info. Sys., Inc. v. Steele Software Systems Corp.*, No. D067264 (Cal. Dist. Ct. App., 4th Dist., Div. 1, Feb. 25, 2015) (dismissing Plaintiffs' renewed attempt to vacate the arbitration as nonappealable and moot in light of the Fourth Circuit's decision in 2007).

Given the sheer volume of cases, opinions, and filings across the tortured history of this litigation, the Court's overview contained herein is not exhaustive. The courts in the above-noted cases have independently endeavored to chronicle Plaintiffs' filings and conduct over the decades.

[5] The Court cites to entries on the New Jersey Superior Court docket by transaction ID number.

and federal courts over more than twenty years, it lacks personal jurisdiction over Defendants to do so. Given the thorough, well-reasoned decision by the Honorable Patrick J. Bartels, P.J.Ch., in the parallel state court litigation involving the same parties, Plaintiffs are collaterally estopped from arguing that this Court has personal jurisdiction over Defendants in New Jersey. *See* State Ct. Op.

Furthermore, on this Court's own independent analysis, Plaintiffs' claims of personal jurisdiction against Defendants in this action are conspicuously lacking. Plaintiffs' claim of personal jurisdiction over Defendants DataQuick and Maxar, neither of whom are headquartered or incorporated in New Jersey, is based on the hyper-attenuated alleged contacts in or around 2006-2007 relating to personnel of non-party Federal Insurance—whom Plaintiffs retained for the purpose of securing a supersedeas bond to allow 3SD to appeal to the Fourth Circuit. (Compl. ¶¶ 34–36; ECF No. 1-1 at 124–42.)

Federal Insurance was not a party to the underlying contract between 3SD and the original DataQuick, the initial California state action, the subsequent arbitration proceeding commenced by 3SD, the District Court lawsuit commenced by 3SD, or 3SD's appeal to the Fourth Circuit. Non-party Federal Insurance's ministerial function performed after the fact, and at 3SD's behest, does not provide any semblance of personal jurisdiction in New Jersey over the subject corporate Defendants here. *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993) (holding that "mere presentation of a claim to a bonding company that posted surety . . . does not support personal jurisdiction in the bonding company's state"). The Court concludes that Plaintiffs have provided no basis to suggest that Defendants purposefully directed any of their alleged conduct at New Jersey, and have failed to meet their burden to establish personal jurisdiction here.

### A. THE UNDERLYING ARBITRATION

Plaintiffs' scattershot, kitchen-sink allegations center on "four (4) fraudulent schemes ("Schemes") by Defendants," encompassing "over 100 documented acts of mail, wire, bank, and insurance fraud, fraud on numerous courts spanning over five (5+) states." (Compl. ¶¶ 2–3.)

The Court need not wade into Plaintiffs' muddled allegations regarding an intricate labyrinth of corporate entities to decide the instant motions. Suffice it to say, the crux of Plaintiffs' allegations is based on the allegedly faulty assignment of a licensing agreement from one "DataQuick" corporate entity to another. In 1996, Plaintiff 3SD, a Delaware corporation, contracted with a California corporation (called DataQuick, but not a party to the instant action) to share various real estate databases in connection with 3SD's real estate lending software. (Compl. ¶ 69; ECF No. 1-1 at 2–8.) In 2000, there was an "Asset Sale and Purchase Agreement" between this California DataQuick[6] and a newly formed Delaware corporation, *also named* DataQuick.[7] (Compl. ¶¶ 65–66, 71.) The arbitrator (in the subsequent arbitration initiated by Plaintiffs) determined that this sale from one DataQuick to another included the rights under the 1996 licensing agreement with 3SD.[8] (*Id.* ¶¶ 71, 140–65); Arbitrator's Award at 7–9. It was this

[6] This April 2000 Asset Sale and Purchase Agreement also included Acxiom Corporation as a seller, the California DataQuick's parent corporation. (Compl. ¶¶ 65–66, 70–71.)

[7] The buyers in this deal also included a precursor to Defendant Maxar, MacDonald Dettwiler & Associates ("MDA"). (Compl. ¶¶ 65–67.) Plaintiffs fail to allege either a state of incorporation or a principal place of business for Defendant Maxar. (*Id.* ¶ 27.)

[8] Notwithstanding the above, Plaintiffs continue to contest the legitimacy of the assignment. (Compl. ¶¶ 71, 140–65.)

new Delaware-incorporated DataQuick,[9] a Defendant in this action, that sued Plaintiff 3SD[10] in the above-referenced California Superior Court case seeking, *inter alia*, unpaid monthly fees and money for unjust enrichment. (*See generally* ECF No. 1-1 at 644–54 (DataQuick's December 2003 complaint).)

Plaintiffs allege that, because 3SD entered the 1996 license agreement with the *California* DataQuick entity, the 2003 lawsuit in California, the ensuing arbitration in Maryland, and all future litigation brought by *Delaware* DataQuick were and are fraudulent, void *ab initio*, and devoid of "subject matter jurisdiction" over the "Imposter" DataQuick. (*See* Compl. ¶¶ 118–22.) This is because, Plaintiffs argue, the Delaware DataQuick was not the same entity as California DataQuick, and Axciom Corporation—the parent corporation to the California DataQuick—never assigned 3SD's 1996 agreement. (*Id.* ¶ 124.) Plaintiffs contend, in short, that (1) no assignment occurred because 3SD's licensing agreement was excluded from the 2000 sale between Axciom (and California DataQuick) and MDA (and Delaware DataQuick), (2) Acxiom could not have assigned the 1996 licensing agreement if it had tried to, because any assignment required 3SD's consent under the 1996 licensing agreement, and (3) the parties and counsel involved in the April 2000 sale concealed the fact that the DataQuicks were different entities from all scrutinizing arbitrators, courts, and dissenters (like Plaintiffs). (*See id.* ¶¶ 140–65.) Apparently unbeknownst to all involved, the wrong DataQuick sued Plaintiffs, and the cases should not have been allowed to proceed.

No adjudicator has ever so held, starting with the arbitrator, James Constable ("the

[9] Plaintiffs do not allege a principal place of business for Defendant DataQuick. (Compl. ¶ 26.) Per DataQuick's MTD and publicly available filings on California's Secretary of State website, it is California. (DataQuick MTD at 4 & n.2.)

[10] As Plaintiffs clarify, Plaintiff 3SD is frequently known as the party named in that California lawsuit, "Steele Software Systems Corp." (Compl. ¶ 24; ECF No. 1-1 at 644–54.)

Arbitrator" or "Arbitrator Constable"). In April 2004, 3SD filed an unopposed motion to compel arbitration of DataQuick's claims based on the language of the 1996 agreement. (ECF No. 1-1 at 691.) "When 3S failed to initiate any action before the [American Arbitration Association ("AAA")], the California court issued another order on September 27, 2004, requiring 3S[D] to initiate an arbitration proceeding by September 30, 2004." *Three S Del.*, 492 F.3d at 524. 3SD filed an arbitration demand in connection with DataQuick's lawsuit, as well as submitting its own claim for breach of contract on the basis that DataQuick was "providing data/information [that was] unusable, outdated or in an insufficient manner." *Id.* The parties appointed Arbitrator Constable. *Id.*

The arbitration proceedings were "a rocky road." Arbitrator's Award at 4. On numerous occasions in advance of the final arbitration hearing, 3SD's counsel stated that the company "would withdraw from the arbitration proceedings." *Id.* "On each occasion, [Plaintiff Scott] Steele was advised by the Arbitrator that withdrawal would not terminate the proceedings with regard to DataQuick's claim (the counterclaim)." *Id.*; *see also id.* at 5 ("The Arbitrator suggested that Steele remain in the case so as not to jeopardize its position."). On May 17, 2005, at the final pre-hearing conference call a week before the hearing on the merits, 3SD's counsel again stated that 3SD was withdrawing from the proceedings and summarily withdrew from the call, and failed to provide its witness lists, exhibits, and pre-hearing brief as required by the Arbitrator. *Id.* at 5.

Nonetheless, on May 23, 2005, the Arbitrator attempted to commence the hearing on the merits with both parties and counsel in attendance.[11] *Id.* As Arbitrator Constable described, there were extensive issues with witness subpoenas as, apparently, 3SD "had made no effort to actually

[11] The substance of the arbitrator's descriptions of the May 23, 2005 hearing is confirmed by the transcript of those proceedings included with Plaintiffs' exhibits. (ECF No. 1-1 at 804–33.)

serve subpoenas on employees or non-employees of DataQuick." *Id.* at 6. Despite entreaties from the Arbitrator that the hearing record could remain open while 3SD properly subpoenaed witnesses,[12] 3SD moved for postponement of the arbitration hearing, and then orally moved to dismiss:

> In particular, Steele claimed that the Arbitrator did not have jurisdiction, that Steele had withdrawn which should have ended the arbitration, that no counterclaim had been filed, that the Arbitrator was biased, that Steele was not afforded sufficient discovery, that the Arbitrator erred in not granting a postponement, that the American Arbitration Association erred in not forwarding all subpoena requests, that the action was barred by the Statute of Limitations, that the Arbitrator did not have jurisdiction to award attorney fees and costs, and that DataQuick had failed to undertake mandatory ADR prior to arbitration. The motion was denied.

*Id.* at 6–7. "Prior to any testimony being offered," Plaintiff Steele himself interjected and instructed his attorney to leave. *Id.* at 7. As the transcript from the hearing chronicles:

> ARBITRATOR CONSTABLE: Let's get our terminology correct. If you withdraw from the proceedings, you have no business here unless, unless --
>
> MR. STEELE: Good-bye.
>
> ARBITRATOR CONSTABLE: -- DataQuick permits you to be an audience. You cannot participate in the proceedings. If you have not withdrawn from the proceedings, you may participate. I hope you participate because the only way I can listen to you is if you participate. The only way I can entertain any defenses that you have or any affirmative relief that you want is if you participate.
>
> MR. STEELE: Let's go.
>
> ARBITRATOR CONSTABLE: If you withdraw, Mrs. Johnson can then say, well, they shouldn't be here.
>
> …

[12] The Arbitrator's patience with 3SD is particularly commendable given Plaintiffs' conduct with respect to DataQuick's subpoenas. Arbitrator's Award at 6 ("Unlike [Plaintiff] Steele, DataQuick attempted to personally serve the subpoenas by private process server. The server did serve [one 3SD witness], yet his efforts to serve Scott Steele and [a 3SD employee] were unsuccessful as described in the affidavits of the process server that were admitted as exhibits. In fact, it is clear that Steele was attempting to avoid having any of its employees personally served with the subpoenas. According to the affidavits, [3SD's counsel] himself participated in the effort to block service. The process server made repeated attempts to serve [a 3SD employee] at his residence but was not successful.").

> MR. STEELE: Shawn, I'm ordering you as my counselor, I'm departing. I want nothing to do with this. I've withdrawn. This is a circus. I'm going to leave here. Let them do whatever they're going to do and I'll file a Motion to Vacate. I'd appreciate it if you come with me, stop these proceedings. And I hope you have it on record, please. And if I may, respectfully, if any judgment is entered against me or my -- or against my corporation due to the negligent procedures in this fashion, I will pursue all remedies available to me for your -- excuse me, counselor.
>
> ARBITRATOR CONSTABLE: Wait a minute, let him finish. Let him finish, Miss Johnson.
>
> MS. JOHNSON: Go ahead.
>
> MR. STEELE: This lady made accusations about me personally, and I am not going to subject myself or my company to this circus. You had the duty, sir, to execute your obligations under the arbitration. Counselor may not say this, but I am going to. You had an obligation to perform your duties, which you didn't do, and I will certainly find out whether you executed them or not. And if you enter -- and you have prejudiced us tremendously by your actions and your nonrecusal, and I will pursue all remedies I have against you and your firm and the arbitration if you continue with these proceedings. Thank you very much.
>
> ARBITRATOR CONSTABLE: Let the record reflect that Mr. Steele is --
>
> MR. STEELE: Please excuse yourself. We are leaving and we are not participating in this circus any longer. Thank you.

(ECF No. 1-1 at 829–31.) Plaintiff Steele and his counsel left the hearing with 3SD's exhibits and witnesses. Arbitrator's Award at 7 ("Thereafter, the hearing continued without them. They never returned."). Nonetheless, extending every possibly courtesy to Plaintiffs, the Arbitrator considered 3SD's previously submitted papers and exhibits, as well as its defenses, including the aforementioned argument regarding the license agreement's assignment: "that DataQuick, the Respondent, was not a proper party to the contract because Steele had not consented to the assignment of the contract to Respondent. Respondent is a Delaware corporation. DataQuick, the original party to the License Agreement, was a California corporation." *Id.* at 7–8. The Arbitrator rejected 3SD's argument that the assignment was improper based on the evidence in the arbitration hearing record. *Id.* at 8–9. Considering all of the evidence in the record—as well as negative

inferences against 3SD for its failure to produce certain documents and reasonably participate in the arbitration—the Arbitrator awarded a total of $6,174,185.64 plus attorney's fees and costs to DataQuick. *Id.* at 12.

### B. LITIGATION TO CONFIRM THE ARBITRATION AWARD

In July 2005, 3SD brought suit in the District of Maryland, moving to vacate Arbitrator Constable's award.[13] *Steele Software Sys. Corp.*, No. 05-02017, ECF Nos. 1, 19. DataQuick cross-moved to confirm the award. *Id.* at ECF No. 21. Despite voluntarily leaving the merits hearing, 3SD challenged the fairness of the Arbitrator's conduct and the reasonableness of the award. On December 21, 2005, in an oral opinion, Judge Motz confirmed the arbitration award, with the exception of the Arbitrator's award of DataQuick's attorney's fees. *See* D. Md. Judgment at 2. 3SD appealed. *Steele Software Sys. Corp.*, No. 05-02017, ECF No. 39. As part of this appeal and consistent with Rule 62(b), 3SD secured a supersedeas bond in the amount of $7,462,439.94 (representing 120% of the judgment plus $500) payable to DataQuick if 3SD lost on appeal. *See id.* at ECF No. 204; (ECF No. 1-1 at 134.) 3SD secured the bond from "Federal Insurance Company, a corporation duly authorized to transact business in the State of Maryland." (ECF No. 1-1 at 134; *see also id.* at 144 ("Federal Insurance Company, a corporation organized and existing under the laws of the State of Indiana and authorized to transact the business of surety in the State of Maryland.").)[14]

---

[13] In a separate lawsuit filed three weeks before, Plaintiff 3SD (apparently through its in-house counsel) sought a temporary restraining order to enjoin the continued arbitration proceedings, arguing that it had been deprived of due process. *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, No. 05-1696, ECF No. 2 (D. Md. June 23, 2005). Judge Motz denied the motion the next day. *Id.* at ECF No. 3. Judge Bartels' opinion states that Judge Motz held on the record that the TRO was "frivolous and sanctionable under [Rule] 11," and that Judge Motz stated that he had "never, frankly, . . . seen a motion filed by an attorney that has less merit." State Ct. Op. at 8.

[14] Plaintiffs allege, without citation, that Federal is a "New Jersey surety." (Compl. ¶¶ 39, 42; Opp. at 15 (describing the bond as a "New Jersey-centered supersedeas bond").) This is plainly belied by Plaintiffs'

On July 12, 2007, the Fourth Circuit affirmed Judge Motz's order. *Three S Del.*, 492 F.3d at 523. The Fourth Circuit rejected each of 3SD's arguments on appeal, none of which included the purported faultiness of the license agreement's assignment between the California and Delaware DataQuicks. *Id.* at 527–28 ("Specifically, 3S asserts that (1) a portion of the Award was not drawn from the essence of the Agreement, (2) the arbitrator manifestly disregarded relevant law, (3) the Award was procured by undue means, (4) the arbitrator was partial, (5) the Award was procured by arbitrator misconduct, and (6) the arbitrator exceeded his power in making the Award."); Brief of Appellant, *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, No. 06-1227, 2006 WL 2781437 (4th Cir. Sept. 15, 2006) (making no arguments regarding assignment).

Following the Fourth Circuit's affirmance, DataQuick attempted to collect on the bond from Federal Insurance. (Compl. ¶¶ 35–36; ECF No. 1-1 at 124–41 (letter and email correspondence between Venable (counsel for DataQuick) and representatives from Federal Insurance and another entity, identified as Branch Banking & Trust Company ("BBTC"), whose role as it relates to the issuance of the bond remains unclear[15]).) As Plaintiffs allege, Venable—DataQuick's counsel at the time—had corresponded with Federal Insurance in July 2007 on "negotiating the wording of the bond, requesting language changes, proposing modifications, and transmitting documents," as well as seeking that Federal Insurance "pay the full penal sum of the supersedeas bond." (Compl. ¶ 35.) Further, the letter correspondence from Venable to Federal Insurance and BBTC lists two recipients based in Warren, New Jersey: Brock Masterson, noted as an "Attorney-In-Fact" for Federal Insurance, and Michael F. Zurcher, listed as an employee

own exhibits describing Federal as organized in Indiana, and, accordingly, "the exhibits control." *Vorchheimer v. Philadelphian Owners Assoc.*, 903 F.3d 100, 112 (3d Cir. 2018).

[15] Plaintiffs do not reference BBTC in their Complaint or in support of their arguments regarding personal jurisdiction.

without a title. (ECF No. 1-1 at 124, 126, 130.) The letters from Venable also list a Richard Towle based in Chesapeake, Virginia, from whom Plaintiffs have submitted a sworn declaration.[16] (*Id.* at 153–58.) Plaintiffs also provide email correspondence from Maxar's alleged counsel at the time, Dorsey & Whitney LLP, regarding electronic bank wire instructions for the firm's trust account. (Compl. ¶¶ 34–36; ECF No. 1-1 at 139–42.)

Almost two years after the Fourth Circuit's affirmance, 3SD moved before Judge Motz under Rule 60(d)(3) to vacate the final judgment against it. *Steele Software Sys. Corp.*, No. 05-02017, ECF No. 267. In its motion, 3SD referenced, *inter alia*, its contentions regarding the improper assignment of the license agreement between DataQuick entities. *Id.* at 8. Judge Motz—after consolidating the case with *yet another* case filed by Plaintiffs attacking the judgment—denied this Rule 60(d)(3) motion, concluding that 3SD was "seeking through this motion to relitigate the issues that previously have been resolved against it in this action. The doctrine of collateral estoppel prohibits it from doing so." *Id.* at ECF No. 285 at 1; *see Three S Del., Inc. v. AAA*, No. 09-0051, ECF No. 1 (D. Md. Jan. 9, 2009) (suit originally brought by 3SD in Maryland state court). The Fourth Circuit, again, affirmed. *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 406 F. App'x 707 (4th Cir. 2010) (per curiam).

Plaintiffs were undeterred. In separate litigation, Plaintiff Steele, proceeding *pro se*, sued Judge Motz in Maryland in connection with Judge Motz's supposed participation in facilitating a fraud on the Court. *Steele v. Motz*, No. 09-792, ECF No. 2 (D. Md. Mar. 27, 2009). That case was also dismissed. *Id.* at ECF No. 31. In August 2009, in separate litigation against Acxiom (the original party, along with California DataQuick, to the 1996 license agreement), Judge Motz

[16] Nowhere in Richard Towel's declaration does he reference any relationship between New Jersey and himself or Federal Insurance. (*See* ECF No. 1-1 at 153–58.)

enjoined Plaintiffs from attempting to reinstitute arbitration proceedings related to the allegedly faulty assignment to Delaware DataQuick. *Acxiom Corp. v. Three S Del., Inc.*, No 09-2058, ECF No. 12 (D. Md. Aug. 10, 2009). Furthermore, in 2015, 3SD again attempted to revive the original California state court lawsuit—the one in which 3SD had compelled the original arbitration—on similar grounds, with the California appellate court denying their request in light of the Fourth Circuit's decision eight years prior. *DataQuick Info. Sys., Inc. v. Steele Software Systems Corp.*, No. D067264 (Cal. Dist. Ct. App., 4th Dist., Div. 1, Feb. 25, 2015).

### C. Parallel New Jersey State Court Litigation

Plaintiffs have now come to New Jersey to present substantially the same theories. Plaintiffs filed suit in New Jersey Superior Court before Judge Bartels in September 2024. *Three S. Del., Inc.*, No. MER-C-87-24, CHC2024299452 (N.J. Super Ct. Ch. Div. Sept. 26, 2024). Plaintiffs' subsequent 280-page, 1,456-paragraph Amended Complaint, naming Defendants DataQuick and Maxar among other defendants, lists fifteen state law counts relating to the original arbitration and the District of Maryland's judgment. *Id.* at CHC2024330621. Following motions to dismiss from all defendants, Judge Bartels dismissed Plaintiffs' claims with prejudice on February 20, 2026. *See generally* State Ct. Op.

Judge Bartels exhaustively chronicled the above litigation history between the parties, *id.* at 3–15, before dismissing all claims (1) for lack of personal jurisdiction over all defendants, *id.* at 15–27, and (2) as time-barred, *id.* at 28–32. Judge Bartels further determined that three of Plaintiffs' claims, brought under the New Jersey Insurance Fraud Prevention Act, were not available to Plaintiffs as non-insurers. *Id.* at 32. Moreover, Judge Bartels determined that Plaintiffs' central contention—that the arbitration was illegitimate—had already been thoroughly litigated and decided, over and over again in a multitude of lawsuits and motions, collaterally estopping

Plaintiffs from further challenging it. *Id.* at 33.

Relevant to the instant motions before the undersigned is Judge Bartels' analysis of personal jurisdiction over Defendants Maxar and DataQuick. For Maxar, Judge Bartels concluded that the corporation was neither incorporated in nor at home in New Jersey sufficient to confer general personal jurisdiction. *Id.* at 24–25. With respect to specific jurisdiction, the Court determined that none of the above litigation regarding the arbitration took place in, affected, or related to New Jersey in any way. *Id.* at 25. Plaintiffs' only alleged connection between the arbitration and Maryland judgment on the one hand and New Jersey on the other—the above-discussed supersedeas bond from Federal Insurance and Maxar's correspondence regarding it—was also insufficient. *Id.* Judge Bartels found that Federal Insurance—an Indiana corporation authorized to do business in Maryland—and the bond itself—"issued under the caption of the United States District Court for the District of Maryland" and executed in Philadelphia—did not connect Maxar's conduct to New Jersey either. *Id.* Moreover, Plaintiffs' contention that "Maxar possibly directed five emails to someone in New Jersey in order to obtain payout of the bond" was also insufficient to create personal jurisdiction.[17] *Id.* (citing *Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672, 679 (N.J. Super. Ct. App. Div. 2013). Judge Bartels concluded that the supersedeas "bond alone is too remote of a connection for this Court to find it has specific jurisdiction over Maxar," and granted Maxar's motion on these grounds. *Id.* at 26.

Judge Bartels held the same for DataQuick. Because DataQuick is a Delaware corporation based in California, Judge Bartels found that it was not generally subject to personal jurisdiction

[17] Judge Bartels also found that a "Power of Attorney document affixed to the bond" that referenced New Jersey was insufficient to create personal jurisdiction. State Ct. Op. at 25. There has been no reference to that Power of Attorney document in any of the parties' filings or in Plaintiffs' Complaint. Thus, any argument from Plaintiffs' relying on this Power of Attorney to create personal jurisdiction is forfeited. Regardless, as concluded by Judge Bartels and for the reasons discussed below, the supersedeas bond is categorically insufficient to create personal jurisdiction over Defendants.

in New Jersey. *Id.* Regarding specific jurisdiction, Judge Bartels concluded that—for the same reasons relating to Maxar—DataQuick's emails and correspondence "demand[ing] payment of the supersedeas bond from Federal Insurance Company at the conclusion of the 3S litigation" was "too remote" to create personal jurisdiction over DataQuick. *Id.* at 27.

After dismissing each of Plaintiffs' claims on multiple grounds, Judge Bartels determined that Plaintiffs' Amended Complaint was frivolous under New Jersey law. *Id.* at 34 (citing N.J. Stat. Ann. § 2A: 15-59.1 ("Frivolous complaint, counterclaim, cross-claim or defense of nonprevailing party; award of costs and attorney fees to prevailing party").) Judge Bartels noted that the "never-ending story" of Plaintiffs' litigation was the very definition of insanity: "Plaintiffs continually file in different courts, seeking a different result." *Id.* As Judge Bartels wrote:

> This Court will not allow Plaintiffs to continue their two-decade long harassment campaign against Defendants in a state that Plaintiffs are well aware has no jurisdiction over this matter, on claims that are [far] past their respective statutes of limitations, and on issues that have been tirelessly litigated since at least 2007. This Court finds Plaintiffs have acted in bad faith, in order to harass Defendants over an arbitration that Plaintiffs compelled and then voluntarily exited over twenty years ago. Plaintiffs are clearly engaging in frivolous litigation.

*Id.* at 35. Accordingly, Judge Bartels concluded that Defendants were entitled to reasonable attorney's fees. *Id.*

On April 14, Plaintiffs moved for reconsideration of Judge Bartels' dismissal, which he denied. *Three S. Del., Inc.*, No. MER-C-87-24 at CHC2026119603. Plaintiffs, undeterred, have filed—by the Court's count—four additional motions seeking, *inter alia*, an order to show cause, vacatur of Judge Bartels' previous orders, discovery from the defendants, and other relief. *Id.* at CHC2026241875, CHC2026241876, CHC2026257373, CHC2026322318 (July 29, July 31, August 13, and October 7 motions from Plaintiffs totaling more than 1,200 pages in motion papers). Judge Bartels has denied and continues to deny these motions on an ongoing basis for substantially the same reasons outlined in his original opinion. *See, e.g.*, *id.* at CHC2026342942.

### D. The Instant Case

On December 24, 2025, while the initial motions to dismiss were still pending before Judge Bartels, Plaintiffs filed the instant suit against DataQuick and Maxar. (Compl.) Plaintiffs assert three counts based on the above allegations: (1) fraud on the court under Rule 60(d)(3), (2) a claim to void the Maryland judgment as void *ab initio* under Rule 60(b)(4), and (3) an "Independent Action to Prevent a Grave Miscarriage of Justice" under Rule 60(d)(1). (*Id.* ¶¶ 230–56.) Across these three counts, Plaintiffs request that the Court declare substantially all conduct by the opposing parties and attorneys in the California, Maryland, and Fourth Circuit cases and arbitration to be fraudulent, as well as to vacate the Maryland judgment against 3SD and void any obligations by Plaintiffs or the bond entities to pay those obligations. (*Id.*)

Buried within the more than 1,000 pages of submissions was a request from Plaintiffs for an order to show cause seeking to prevent Defendants from enforcing their rights to the supersedeas bond, filed without a notice of motion as required by Local Rules. (*See* ECF No. 8 (citing ECF Nos 1-2, 1-4).) The Court denied this request for failure to comply with Local Rules without prejudice and set its first teleconference with the parties on February 2, 2026. (*Id.*) At this first call, counsel for Plaintiffs, Mr. Benjamin Curcio, upon questioning of the Court, confirmed the above history of litigation between the parties and that parallel litigation was ongoing before Judge Bartels.[18] (Feb. 2, 2026 Hearing Tr. 5:14–8:2.) After confirming that Plaintiffs' asserted basis for venue and personal jurisdiction in New Jersey was related to the supersedeas bond with Federal Insurance, the undersigned noted to Mr. Curcio in a preliminary, nonbinding way that there appeared to be multitude of facial problems with Plaintiffs' allegations related to collateral

[18] Judge Bartels had not yet issued his opinion on the motions to dismiss before him discussed above at the time of the February 2 and February 5 teleconferences before the undersigned.

estoppel, laches, venue, personal jurisdiction, and more. (*Id.* at 11:1–9, 15:3–17:4 (THE COURT: And so that conduct [related to the supersedeas bond], all these discussions, Mr. Curcio, would have occurred between 2006 when the District of Maryland issued its judgment unfavorable to the plaintiff, through sometime in 2007 when the Fourth Circuit affirmed the District Court. Are you saying that those communications in '06 and '07 formed the basis of this Court's personal jurisdiction and venue? Am I understanding this correctly? MR. CURCIO: Yes. Based upon a fraud in the court by officers of the court. I know it sounds outlandish, but that is what we intend to prove, your Honor.).)

The Court and parties reconvened for a follow-up teleconference on February 5. The Court again made clear its preliminary observations of threshold jurisdictional and venue issues regarding Plaintiffs' allegations. (Feb. 5, 2026 Hearing Tr. 6:16–7:16.) On the record, Mr. Curcio asserted that personal jurisdiction and venue were appropriate because Federal Insurance was based in New Jersey, or, in the alternative, Defendants' conduct relating to the supersedeas bond was directed at New Jersey. (*Id.* at 7:20–8:19.) Mr. Curcio also explained that the crux of Plaintiffs' renewed allegations regarding the fraudulent arbitration stemmed from Plaintiffs' obtaining certain documents unavailable to them at the time of the original case before Judge Motz and Fourth Circuit appeal. Specifically, Mr. Curcio represented that (1) in 2009, after the Rule 60 motion before Judge Motz, his clients obtained the 2000 asset purchase agreement between Acxiom and MDA, (*id.* at 13:6–25), and (2) in 2019, his clients obtained the full transcript from the arbitration hearing from "a local court in Baltimore" of the proceedings before Arbitrator Constable after Plaintiff Steele withdrew with his counsel, (*id.* at 10:25–11:19). When the undersigned inquired why Plaintiffs did not raise these supposedly revelatory documents with the District of Maryland in the 6 and 16 years following their discovery, Mr. Curcio simply asserted that "[a] void judgment

. . . can be attacked at any time.” (*Id.* at 16:1–16.) In light of its initial observations regarding personal jurisdiction and venue, the Court concluded the call by setting a briefing schedule for Defendants’ motions under Rules 12(b)(2) and (b)(3), while preserving Defendants’ rights to file other motions under Rule 12 in the future. (*Id.* at 23:14–21; ECF No. 17.)

While briefing was underway on Defendants’ motions, Judge Bartels issued his opinion on February 20. *See* State Ct. Op. The undersigned convened another teleconference on March 4, 2026. (ECF No. 19.) Plaintiff Steele appeared with his counsel. The Court highlighted for the parties Judge Bartels’ painstaking efforts to chronicle the litigation history between the parties, his dismissal with prejudice of all claims and parties, and his assessment that Plaintiffs’ suit violated New Jersey’s frivolous complaint statute. (Mar. 4, 2026 Hearing Tr. 4:8–5:24.) When the undersigned inquired how his clients wished to proceed in light of Judge Bartels’ clear opinion, Mr. Curcio was unphased: He noted his intention to file a motion for reconsideration of Judge Bartels’ order and reasserted Plaintiffs’ theory that the arbitration was fraudulent and void. (*Id.* at 6:16–7:1.) As a courtesy to Mr. Curcio and his clients, the undersigned also noted that both Judge Motz and Judge Bartels had previously commented on the “sanctionable and remarkable” nature of Plaintiffs’ allegations. (*Id.* at 7:11–18.) Given Plaintiffs’ unwavering desire to litigate the instant matter, the Court ordered the parties to resume their briefing on Defendants’ motions. (*Id.* 12:6–13:20.) In light of Mr. Curcio’s representation that a motion for reconsideration was forthcoming before Judge Bartels, the Court paused briefing Defendants’ reply briefs pending Judge Bartels’ resolution of the motion for reconsideration. (*Id.*; ECF No. 21.)

After Judge Bartels’ April 14, 2026 decision denying reconsideration, the Court directed the parties to meet and confer regarding the forthcoming motions and the case *in toto*. (ECF Nos. 22, 23.) The Court ordered that Defendants file a letter apprising the Court of the results of this

meet and confer. (ECF No. 23.) Defendants complied, stating that meet and confer efforts were unsuccessful and that motion briefing would continue. (ECF No. 24.) The same day, Mr. Curcio filed a 5-page letter rehashing substantially the same factual allegations and legal contentions as contained in the Complaint. (ECF No. 25.) The Court struck the unauthorized letter as "unproductive" and unrelated to the "discrete issues upon which the Court authorized briefing—personal jurisdiction and venue." (ECF No. 27.)

A week later, the Motions were filed to the docket. (ECF Nos. 28–33.) Both Defendants, pursuant to Rules 12(b)(2) and (b)(3), argue (1) that issue preclusion forecloses reconsidering Judge Bartels' personal jurisdiction determination, (2) Plaintiffs otherwise fail to assert personal jurisdiction and (3) in the alternative, New Jersey is an improper venue. (Maxar MTD; DataQuick MTD.) On June 14, 2026, about a month after the motion papers were filed to the docket, Mr. Curcio filed another, 14-page letter requesting a stay of the pending Motions and leave to file a separate motion under Rule 60(d)(3) and rehashing, yet again, Plaintiffs' fraud-on-the-court argument on the merits.[19] The Court declined Plaintiffs' request for leave, noting the threshold jurisdictional issues which may preclude the Court from assessing Plaintiffs' claims, and again struck Plaintiffs' counsel's filing. (ECF No. 35.) Defendants' Motions contending a lack of personal jurisdiction are now ripe for review.

---

[19] Given the argument in Plaintiffs' counsel's letter, it appears to the Court that the disposition of that prospective motion—in advance of Rule 12 motion practice, discovery, or otherwise—would be an end-run on determining if this Court is an appropriate jurisdiction or venue for this lawsuit; Plaintiffs would receive an immediate merits decision regarding the validity of the Maryland judgment. Such an order of operations is antithetical to federal civil practice, even in the Rule 60 context. *See, e.g., Haller v. Usman*, No. 22-773, 2022 WL 17131854, at *2 (D.N.J. Nov. 18, 2022) (holding that without personal jurisdiction over defendants, a court "cannot act"); *Fink v. Bishop*, No. 22-10978, 2023 WL 2025172, at *1-2 (S.D.N.Y. Jan. 25, 2023) (assessing jurisdiction and venue before deciding the underlying merits of Rule 60(d)(1) and 60(d)(3) complaint).

## II. LEGAL STANDARD

### A. RULE 12(B)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). On a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Once a defendant raises a jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Such competent evidence may include sworn affidavits, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984), but may not include a mere "unverified complaint," *Markferding v. Westmoreland Cnty. (Pa.) Domestic Rels. Off.*, No. 05-755, 2005 WL 1683744, at *3 (D.N.J. June 17, 2005), or bare assertions made "upon information and belief." *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. 07-375, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). In short, the plaintiff must offer "actual proofs, not mere allegations." *Patterson by Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67 n.9). The Court must construe all disputed facts in the plaintiff's favor. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

To meet its burden of establishing personal jurisdiction, a plaintiff may show the defendant's "continuous and systematic" contacts with the forum state such that the Court can exercise general jurisdiction over the plaintiff. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). Alternatively, the plaintiff may allege that a defendant has sufficient minimum contacts with a state to create specific jurisdiction, accomplished by "establish[ing] with

reasonable particularity" three elements.[20] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). First, the defendant must have "'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

## III. DISCUSSION

The Court's analysis begins and ends with threshold issues. First, issue preclusion bars reconsideration of whether the exercise of personal jurisdiction over Defendants in New Jersey is permissible, an issue already decided by Judge Bartels in the parallel New Jersey state litigation. Second, even if Plaintiffs were not collaterally estopped from relitigating personal jurisdiction, Plaintiffs' Complaint fails to satisfy their burden of establishing the Court's personal jurisdiction over either Defendant, and Defendants' alleged conduct in connection with the supersedeas bond is a specious, insufficient basis to create personal jurisdiction over parties with no connection to New Jersey.

---

[20] Furthermore, in order to exercise "long-arm" jurisdiction over a defendant, the Court must first "apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution. In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998); N.J. Ct. R. 4:4-4(b)(1); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir. 1981) (explaining that this two-part inquiry is also applicable in non-diversity cases).

### A. Issue Preclusion Bars Relitigating Personal Jurisdiction

As an initial matter, Plaintiffs' argument is foreclosed by Judge Bartels' decision in the parallel state court litigation. Under the doctrine of issue preclusion (also known as "collateral estoppel"), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine operates to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* Federal courts look to the law of the adjudicating state to determine the preclusive effect of that judgment, in this case New Jersey. *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002); *see also id.* ("In New Jersey, when a judgment of a court of competent jurisdiction determines a question in issue, the judgment estops the parties and privies from relitigating the same issue in a subsequent proceeding." (citing *City of Plainfield v. Pub. Serv. Elec. & Gas Co.*, 412 A.2d 759, 765 (N.J. 1980))). Under New Jersey law, courts apply a five-pronged test to determine if a party is barred from relitigating an issue: "(1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding." *Id.* (citing *In re Estate of Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994)).

Judge Bartels' determination that the Superior Court lacked personal jurisdiction over Defendants DataQuick and Maxar satisfies each of these prongs. Although Plaintiffs—the same plaintiffs as the state proceeding—alleged different causes of action in the state court suit, their asserted basis for personal jurisdiction there—Defendants' contacts with and efforts to collect

upon the supersedeas bond with Federal Insurance—is identical to their allegations here. *See* State Ct. Op. at 24–27; (Compl. ¶¶ 33–43; Maxar MTD at 7–8); *Cruickshank-Wallace v. CAN Fin. Corp.*, 769 F. App'x 77, 82 (3d Cir. 2019) ("Comparing the pleadings in both the state and federal courts indicates that [Plaintiffs] did not make any new allegations in the federal court that would support a result different from that in the state court." (quoting *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983))). The issue of personal jurisdiction in New Jersey was the first among several independently sufficient—and therefore essential—grounds for Judge Bartels' dismissal and was actually litigated by the parties following motions under New Jersey Rule 4:6-2(b). State Ct. Op. at 19–21, 24–27; *Anderson v. C.I.R.*, 698 F.3d 160, 164–165 (3d Cir. 2012) (explaining that "independently sufficient alternative findings should be given preclusive effect" (quoting *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006)).

Furthermore, although personal jurisdiction is a threshold issue, "[t]he principles of collateral estoppel apply with equal force to a prior determination by a court that it lacks personal jurisdiction over a party. Therefore, once a New Jersey state court has concluded that it lacks personal jurisdiction over a party, that jurisdictional issue cannot be relitigated in this Court." *Kitces v. Wood*, 917 F. Supp. 338, 341 (D.N.J. 1996); *Saudi Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 454 (3d Cir. 2004) (explaining, in dicta, that "[i]ssue preclusion may apply to non-merits judgments [like personal jurisdiction] which are conclusive as to those matters actually adjudged"); *Cruickshank-Wallace*, 769 F. App'x at 81–82 (applying issue preclusion to bar relitigating previous personal jurisdiction determination by lower state court); *Sebso v. Bergen Cnty. Prosecutor's Office*, No. 21-3048, 2021 WL 4786113, at *6 n.5 (D.N.J. Oct. 14, 2021) (collecting cases). Accordingly, Plaintiffs are estopped from relitigating the issue of personal jurisdiction over Maxar and DataQuick in New Jersey and the claims against them must be

dismissed.

### B. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Even assuming, *arguendo*, that issue preclusion did not bar Plaintiffs' arguments regarding personal jurisdiction, the Complaint independently fails to support the Court's jurisdiction over Defendants.[21] In response to Defendants' Motions, Plaintiffs do not argue that the Court can exercise general personal jurisdiction over DataQuick, a California-based corporation incorporated in Delaware, (DataQuick Opp. at 15; DataQuick MTD at 4), or Maxar, a corporation with no pleaded principal place of business or state of incorporation,[22] (Compl. ¶ 27; Maxar Opp. at 15). Plaintiffs do not meaningfully argue that either Defendant satisfies "the traditional specific-personal-jurisdiction test, which focuses on whether [Defendants] had enough minimum contacts with New Jersey,"[23] *Aquino v. Breede*, No. 24-2941, 2025 WL 2058876, at *2 (3d Cir. July 23, 2025) (citing *Ford Motor v. Mont. Eighth Jud. Dist. Ct.* 592 U.S. 351, 359 (2021)). Instead,

---

[21] Although personal jurisdiction is typically a claim-specific inquiry, *see, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001), Plaintiffs rely on identical facts in the Complaint to support their basis for personal jurisdiction with respect to all three claims, (*see* Compl. ¶¶ 33–37; DataQuick Opp. at 15; Maxar Opp. at 15). Accordingly, the Court analyzes Plaintiffs' claims collectively. *See Remick*, 238 F.3d at 255 (claim-specific analysis "may not be necessary . . . in every multiple claim case").

[22] Judge Bartels states in his opinion that Maxar was incorporated in Delaware. State Ct. Op. at 18.

[23] The Court notes that such traditional specific jurisdiction would not reach either Defendant. Defendants did not "purposefully avail [themselves] of the privilege of conducting activities within" New Jersey, nor does the litigation "arise[] our of or relate[] to the defendant's contacts" with New Jersey. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924–25 (2011). Defendants' direct contacts with New Jersey are namely based on minimal correspondence with New Jersey-based employees of Federal Insurance, a non-party entity incorporated in *Indiana* and licensed to do business in Maryland. (ECF No. 1-1 at 134, 144); *Aquino v. Breede*, No. 23-2459, 2023 WL 7195173, at *2 n.6 (D.N.J. Nov. 1, 2023); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259–60 & n.3 (3d Cir. 1998) ("[M]inimal communication between the defendant and the plaintiff in the forum state, without more, will not subject defendant to the jurisdiction of that state's court system."); *see also Ontel Prods. Corp. v. Mindscope Prods.*, 220 F. Supp. 3d 555, 563 (D.N.J. 2016) (finding that attorney-to-attorney communications made after start of litigation insufficient to create personal jurisdiction for defendant); *Mellon Bank (East) PSFS, N.A.*, 983 F.2d at 556 (holding that "mere presentation of a claim to a bonding company that posted surety . . . does not support personal jurisdiction in the bonding company's state"). Accordingly, Plaintiffs fail to meet their burden under the traditional specific jurisdiction test. *Dayhoff Inc.*, 86 F.3d at 1302.

Plaintiffs—in their *single page* of analysis on personal jurisdiction—rely primarily on the "effects" test articulated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789 (1984) as the basis for the Court's jurisdiction over Defendants. (DataQuick Opp. at 15; Maxar Opp. at 15.)

As the Third Circuit explained in *IMO Indus., Inc. v. Kiekert AG*, the *Calder* effects test allows a court to "exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." 155 F.3d 254, 261 (3d Cir. 1998) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992)). To conclude that the Court has such jurisdiction over the nonresident defendant for intentional "business torts," a plaintiff must show, by a preponderance of the evidence:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*Id.* at 265–66 (footnote omitted). The key inquiry for the last two prongs is "whether the defendant's conduct connects him to the forum in a meaningful way." *A. Neumann & Assocs., LLC v. NRC Realty & Cap. Advisors, LLC*, No. 24-5754, 2024 WL 4894769, at *4 (D.N.J. Nov. 26, 2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). The third prong requires plaintiff to "show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant *expressly aimed* its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266 (emphasis added).

Putting aside Plaintiffs' dubious ability even to meet the first prong, quite clearly,

Plaintiffs' claims fail prongs two and three of the *Calder* test.[24] Plaintiffs, with no connection to New Jersey themselves, cannot be said to have felt *any* "brunt" of Defendants' conduct in New Jersey, let alone enough to indicate that New Jersey is the "focal point" of the harm felt by Defendants' alleged fraud(s). *Id.* Instead, the alleged contractual fraud and litigation relating to a final judgment against 3SD issued in Maryland based on an arbitration proceeding started in California—were "felt" by Plaintiffs in the states in which the underlying litigation and contractual assignment occurred. This conclusion is consistent with separate caselaw suggesting that relief under Rule 60 "must be brought in the court which rendered the original judgment." *Western Shoshone Nat. Council v. United States*, 357 F. Supp. 2d 172, 175 (D.D.C. 2004) (quoting *Goodwin v. Home Buying Inv. Co.*, 352 F. Supp. 413, 416 (D.D.C. 1973)).

Moreover, Defendants' alleged conduct was not sufficiently directed at New Jersey to satisfy the third prong of *Calder*. Federal Insurance does not appear to be based in New Jersey. Plaintiffs' own submissions contradict their assertion that Federal Insurance is a "New Jersey surety." (Compl. ¶¶ 39, 42; Maxar Opp. at 15; DataQuick Opp. at 15.) The supersedeas bond and related documents state that Federal Insurance is "a corporation organized and existing under the laws of the State of Indiana and authorized to transact the business of surety in the State of Maryland." (ECF No. 1-1 at 134, 144.) The bond itself was certified and notarized in Philadelphia by a Pennsylvania-based notary. (*Id.* at 628.) Although Plaintiffs point to the correspondence from

---

[24] It is also unclear whether Plaintiffs' claims under Rule 60 would qualify as "intentional torts" at all. *IMO Indus., Inc.*, 155 F.3d at 265–66. Independent actions under Rule 60(d) are based on the Rules' preservation of a "court's power" to "relieve a party from a judgment" or "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3). They do not involve the Court rectifying "a violation of some duty owing to plaintiff," as is required in a tort. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992) (quoting Black's Law Dictionary 1489 (6th ed. 1990)). Plaintiffs offer no cases applying the *Calder* effects test in this or any circuit to the Rule 60 claims that they assert, and the Court's own search has independently yielded no results. (*See* Maxar Opp. at 15; DataQuick Opp. at 15.) Assuming, *arguendo*, that the various assertions of fraud in Plaintiffs' allegations are sufficient to survive this first prong of the *Calder* test, they have still failed to assert personal jurisdiction for the reasons stated above.

DataQuick's counsel to two employees at Federal Insurance with New Jersey addresses, these addresses alone are insufficient to prove that Federal Insurance is based in New Jersey for personal jurisdiction purposes. (ECF No. 1-1 at 124, 126, 130); *cf. Kelly v. Vigilant Expeditionary Sols., Inc.*, No. 24-503, 2025 WL 2494533, at *5 (D.N.J. Aug. 30, 2025) (explaining that the mere presence of employees in New Jersey did not make that corporation at home in New Jersey).

Even if Federal Insurance were based in New Jersey, which is contradicted by Plaintiffs' own submissions, the Third Circuit has conclusively held that "the mere presentation of a claim to a bonding company that posted surety . . . does not support personal jurisdiction in the bonding company's state." *Mellon Bank (East) PSFS, N.A.*, 983 F.2d at 556. This is particularly true given that it was *3SD*, and not Defendants, that selected Federal Insurance in connection with securing its supersedeas bond. *Steele Software Sys. Corp.*, No. 05-02017, ECF No. 192 (describing the bond as "provided by Three S Delaware, Inc."); *Mellon Bank*, 983 F.2d at 555 (finding no personal jurisdiction where selection of bonding company was not made by defendant). In short, the obtaining of the supersedeas bond to ensure the judgment issued in Maryland, despite Plaintiffs' contentions otherwise, is not actionable harm under *Calder*. Plaintiffs' legal avenue to seek relief from the 2006 Maryland judgment in the Fourth Circuit was unsuccessful and this end-run, like all the others, is frivolous and fails.

A bond (1) executed in Pennsylvania (2) by a company incorporated in Indiana (3) to pay the judgment owed to two Delaware corporations (4) for a judgment rendered by a federal court in Maryland (5) in connection with a lawsuit originally filed in California has no connection to New Jersey makes plain a patent lack of personal jurisdiction here in New Jersey. Thus, consistent with Judge Bartels' ruling, Plaintiffs have not established this Court's personal jurisdiction over

each of the claims against Defendants Maxar and DataQuick.[25] *Dayhoff Inc.*, 86 F.3d at 1302.

### C. Dismissal Without Prejudice But Without Leave to Amend

Given the binding Third Circuit case law on dismissals on "threshold, nonmerits issue[s]" like personal jurisdiction, the Court is constrained to dismiss without prejudice. *Merritts v. Richards*, 62 F.4th 764, 772 & n.4 (3d Cir. 2023); *Blankenship v. Fin. Indus. Regul. Auth.*, No. 24-2860, 2026 WL 64096, at *2 n.2 (3d Cir. Jan. 8, 2026) ("Dismissals for lack of subject matter jurisdiction and for lack of personal jurisdiction alike are without prejudice." (collecting cases)). The Court, however, need not provide leave to amend where doing so would be "inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Where a plaintiff will not be able to remedy these threshold issues, this form of dismissal—without leave to amend but without prejudice to the merits—is appropriate in light of the Third Circuit's precedent. *See, e.g.*, *33 Taps, LLC v. Heartland Payment Sys., LLC*, No. 21-13855, 2025 WL 1502918, at *6 n.1 (D.N.J. May 27, 2025); *Polimeda v. Outdoorsy*, No. 24-6727, 2025 WL 2910655, at *8 (D.N.J. Oct. 14, 2025); *Roman v. M&T Bank*, No. 23-308, 2025 WL 592736, at *8 (W.D. Pa. Feb. 24, 2025); *see also Kim v. Unlimited Settlement Servs.*, No. 25-1949, 2026 WL 1031815, at *3–4 (3d Cir. Apr. 16, 2026). Accordingly, the Court's dismissal must be without prejudice, but it will not grant Plaintiffs leave to amend their Complaint. The Court declines to address the litany of other legal

---

[25] In their Oppositions to the Motions, Plaintiffs request the opportunity to conduct jurisdictional discovery to bolster its jurisdictional allegations. (*See* Maxar Opp. at 16; DataQuick Opp. at 16.) The Third Circuit has explained that while such jurisdictional discovery is normally subject to a "deferential" approach, it need not be granted where a plaintiff's claims are "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quotations omitted). In light of Judge Bartels' dismissals on a number of independent bases, his finding that Plaintiffs' claims were frivolous under New Jersey law, and two decades of dismissals in connection with Plaintiffs' allegations, the undersigned concludes that Plaintiffs' claims are frivolous and unworthy of jurisdictional discovery. *See generally* State Ct. Op. It would also be patently unjust for this Court to compel Defendants to undertake the expense of jurisdictional discovery given the decades of litigation they have weathered in connection with this matter. The bleeding to both the Defendants and the courts must stop.

issues relating to the subject lawsuit including jurisdiction, timeliness, substance, preclusion, venue, and otherwise.[26]

As a closing note, time and again, Judge Motz, Judge Bartels, and the undersigned have forewarned—or explicitly sanctioned—Plaintiffs and their counsel for pursuing this never-ending campaign of frivolous litigation relating to the arbitration and ensuing judgment, which are now decades old. D. Md. Judgment; State Ct. Op. at 8 (Judge Motz opining on the record twenty years ago that 3SD's efforts to stop the arbitration proceedings were "frivolous and sanctionable under [Rule] 11," and that he had "never, frankly, . . . seen a motion filed by an attorney that has less merit"); *id.* at 34–35 (Judge Bartels concluding that Plaintiffs' conduct was frivolous, harassing, brought in bad faith, and awarding Defendants reasonable attorney's fees and costs); (Mar. 4, 2026 Hearing Tr. 4:8–7:18 (the undersigned recounting Judge Motz and Judge Bartels' comments to Plaintiff Steele and his counsel); ECF Nos. 27, 35.) To date, Defendants have not moved for sanctions under Rule 11 or otherwise, and the Court notes its own independent authority to do so. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927; *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011).

[26] *See* State Ct. Op. at 28–33 (discussing statute of limitations and other collateral estoppel issues relating to the validity of the original arbitration); *On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc.*, 245 F.R.D. 213, 216 (E.D. Pa. 2007) ("Motions under Rule 60(b)(4) usually are, perhaps rightfully so, addressed to the court that entered the judgment."); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 252 (3d Cir. 2008) ("Several circuits have either held, or stated in dicta, that the power of a federal district court to set aside another district court's judgment is limited."); *Western Shoshone Nat. Council*, 357 F. Supp. 2d at 175 ("Since the judgment in question was rendered by another court, this Court lacks subject matter jurisdiction to void it."); *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 157 (2026) (vacating a judgment under Rule 60 as void must happen within a "reasonable time"); *Gage v. Wells Fargo Bank, NA AS*, No. 23-2320, 2023 WL 7211398, at *2 (3d Cir. Nov. 2, 2023) (noting the "demanding standard" to satisfy Rule 60(d)(3) claims); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough [to confer venue].").

## CONCLUSION

For the foregoing reasons, Defendants Motions are **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order will accompany this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: November 13, 2026